IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| THE CITY OF HUNTSVILLE, d/b/a ) | |
| HUNTSVILLE UTILITIES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: CV-02-HS-1296-NE |
| ) | |
| PROLIANCE ENERGY, LLC, et al. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Defendant has moved for Summary Judgment as to Count VII[1] of Defendant's Amended Counterclaim (doc. 57). Plaintiff's opposition is document #111, and Defendant's reply is document #118.

In this Motion, Defendant (ProLiance) seeks an order from this Court that Plaintiff (Huntsville) breached a fixed price buy order to purchase natural gas at $5.16 per thousand cubic feet ("MCF"). Huntsville opposes such motion on the grounds that: (i) the buy order ("Second Amendment") was part of the August 1, 2000 Agreement (the "Original Agreement")[2] and ProLiance materially breached the Original Agreement; (ii) the ProLiance materially breached the Second Amendment; (iii) ProLiance breached its fiduciary duties under the terms of the Original Agreement;

---

[1]Count VII of ProLiance's Amended Counterclaim became Count VI of ProLiance's Second Amended Counterclaim when ProLiance voluntarily dismissed Count V of its Amended Counterclaim. Because the Second Amended Counterclaim was filed after ProLiance's Motion was fully briefed, this Opinion will refer to the Count as "Count VII."

[2]Pursuant to its Order dated October 4, 2004 (doc. 174) this Court has found that the Original Agreement and the Second Amendment were duly authorized.

1

(iv) ProLiance fraudulently induced the Original Agreement; and (v) ProLiance fraudulently induced the Second Amendment.  For the reasons hereinafter stated, the Court finds that ProLiance's Motion is due to be **DENIED**.

## Background

In August, 2000, Huntsville entered into an agreement with ProLiance for ProLiance to provide all of Huntsville's natural gas requirements by acting as its agent and by providing managerial services.

In late January of 2001, Huntsville placed a fixed-price buy order at $5.16 per MCF, for approximately 16 million MCF of natural gas for use by Huntsville over the months of February 2001 through June 2003.  In response, ProLiance entered into fixed-price purchase agreements with Texaco to insure that ProLiance could provide the volumes of gas pursuant to the Second Agreement.  In March of 2001, Huntsville learned the facts which it alleges create its defenses to Count VII of ProLiance's Counterclaim. From February, 2001, through September, 2002, ProLiance delivered and sold the volumes of gas called for under the Second Amendment, and Huntsville accepted and paid for these volumes.  On August 27, 2002, Huntsville informed ProLiance that Huntsville no longer intended to accept or pay for the gas ordered under the Second Amendment. Huntsville did not "nominate" any volume of gas for the month of October, 2002, and has purchased no gas from ProLiance since September 31, 2002.

ProLiance asserts that Huntsville's actions on August 27, 2002, and thereafter constitute breach of contract, specifically, the buy order.  In Count VII of its Counterclaim, ProLiance seeks damages for Huntsville's asserted breach of the buy order.

**Standard for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d

at 1115-17 (citing U.S. v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged

evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

## Analysis

At the time, late January 2001, that Huntsville entered into the Second Agreement, Huntsville was unaware that the invoices it was receiving from ProLiance did not accurately reflect the price Huntsville was being charged or the balance Huntsville owed. Huntsville was, however, in receipt of ProLiance's December, 2000, bill, a bill which admittedly showed intentionally inflated "spot" market prices for natural gas. There is direct evidence, which for the purposes of this motion must be taken as established, that Huntsville entered into the Second Agreement because it was "afraid" to take the risk of buying gas on the spot market at such high prices. The December, 2000, bill is undisputedly a communication from ProLiance that immediately preceded Huntsville's decision and that falsely inflated the spot market price of gas. Given the proximity in time of these events (receipt of the December, 2000, bill and the decision to enter into the Second Agreement), and given Huntsville's lack of knowledge of the inflation of the spot market prices on that bill, a jury reasonably could conclude that Huntsville reasonably relied upon the spot market prices in that bill. From these facts, a genuine issue of material fact exists as to whether an intentionally false communication from ProLiance induced Huntsville to enter into the Second Agreement. That is, there is a genuine issue of material fact as to whether or not ProLiance fraudulently induced Huntsville to enter into the Second Agreement.

## **Conclusion**

For the foregoing reasons, ProLiance's Motion is due to be **DENIED**. A separate order will be entered.

      **DONE** this 9th day of December, 2004.

                                                                          */s/ Virginia Emerson Hopkins*
                                                                        **VIRGINIA EMERSON HOPKINS**
                                                                        United States District Judge