**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| CITY OF HUNTSVILLE d/b/a | ) |
| HUNTSVILLE UTILITIES, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **Case No.: CV-02-HS-1296-NE** |
| | ) |
| PROLIANCE ENERGIES, LLC; | ) |
| et al., | ) |
| | ) |
| **Defendants.** | ) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendant ProLiance Energies, LLC ("ProLiance") has moved (doc. 81) for Summary Judgment as to Counts IV (Breach of Contract), Count V (Breach of Fiduciary Duty), Count VI (Fraudulent Inducement), Count VII (Fraud), Count VIII (Conspiracy to Defraud), Count IX (Negligence), Count X (Wantonness), Count XI (Conversion) and Count XIII (Intentional Interference with Contractual or Business Relations) of Plaintiff's ("Huntsville") Second Amended and Restated Complaint (doc. 34). The parties have thoroughly briefed and argued the issues. For the reasons set forth herein, the Motion is due to be **GRANTED** as to Counts IX and X,  **DENIED** as to Counts VI, VII, and VIII and **GRANTED** in part and **DENIED** in part as to Counts IV, V, XI, and XIII.

<u>Background</u>

        The court presumes the reader is familiar with the background of the action from previous Orders. This action grows out of the "NATURAL GAS SALES MANAGEMENT AND AGENCY AGREEMENT CONTRACT No. TSVG 1-HU" ("the Agreement") effective August 1, 2000, entered into between Huntsville and ProLiance in mid-September, 2000. Doc. 164, Exhibit 24.

Huntsville and ProLiance are at issue over what the agreement was, how it came into existence, and each other's performance (and alleged breach) thereof.  When "gas" or gas prices are mentioned, what is meant is the price per million British Thermal units ("MMBtu").

Plaintiff, The City of Huntsville d/b/a Huntsville Utilities ("Huntsville"), alleges that ProLiance is liable to Huntsville under various theories.  Huntsville says that the Agreement with with ProLiance called for ProLiance to provide all of Huntsville's natural gas requirements by acting as Huntsville's agent and by providing managerial services relating to transportation and storage of Huntsville's gas, including gas reserves.  Huntsville alleges that ProLiance beached its contract and the fiduciary duties it owed Huntsville by failing to provide natural gas at the agreed price, failing to provide timely advice under the agreement for gas management services, by charging excessive transportation fees, and by mismanaging stored gas reserves.  Huntsville claims that ProLiance represented to it that gas could be purchased at a low fixed rate, but Huntsville actually had to pay higher prices.  Huntsville also asserts that ProLiance sent false and misleading invoices as part of a fraudulent billing scheme designed to mislead Huntsville about what it was paying for gas and how that gas was being paid for (e.g., from Huntsville's gas reserves).

<u>Standard for Summary Judgment</u>

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions

of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248;  Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing U.S. v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

3

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  Lewis v. Casey, 518 U.S. 343 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

Analysis

I.       Count IV (Breach of Contract)

In Count IV, Huntsville alleges that ProLiance breached the Original Agreement by (i) failing to provide natural gas at $2.26 MMBtu; (ii) failing to provide timely advice under the gas

4

management services portion of the Original Agreement; (iii) charging Huntsville excessive transportation fees; (iv) sending false and misleading invoices; (v) mismanaging stored natural gas reserves; and (vi) breaching its fiduciary duties, self-dealing, and acting in conflict with the interests of Huntsville.

The Original Agreement was an index, rather than a fixed-price, contract. Additionally, Huntsville did not effectively exercise its option to convert to a $2.26 fixed price. The oral representations about the Sipsey River Valley credit are barred by the statute of frauds. Any written communications about the Sipsey River Valley credit either post-date the Original Agreement, and were not in a form to effect an amendment to the Original Agreement or, if they predated the Original Agreement, are barred by the merger clause contained in the Original Agreement. Similarly, any oral representations about the Sipsey River Valley credit were barred by the contract's merger clause. Finally, it is undisputed that Huntsville's employee, John DeMent, who negotiated the Original Agreement on Huntsville's behalf, knew that the Sipsey River Valley credit was contingent. Therefore, ProLiance is entitled to summary judgment as to any Count IV claim by Huntsville for breach of contract that is based upon the premise that ProLiance was contractually obligated to provide Huntsville with <u>any</u> quantity of gas at $2.26 MMBtu.

By the same token, there is extensive evidence that ProLiance sent Huntsville false invoices that misrepresented, <u>inter</u> <u>alia</u>, the transportation charges for gas delivered to Huntsville and Huntsville's gas storage capacity. So ProLiance's Motion is due to be denied as to the provisions of Count IV wherein Huntsville alleges breach of contract by failing to provide timely advice under the gas management services portion of the Original Agreement.

Further, because there is substantial evidence that ProLiance charged Huntsville excessive

transportation fees, ProLiance's Motion is due to be denied as to the provisions of Count IV wherein Huntsville alleges breach of contract arising from such excessive fees.

There is also substantial evidence that ProLiance sent Huntsville false and misleading invoices.  ProLiance's Motion is due to be denied as to the provisions of Count IV wherein Huntsville alleges breach of contract arising from such false and misleading invoices.

It is undisputed that ProLiance utilized Huntsville's stored natural gas reserves in a manner which was not contractually authorized.[1]  ProLiance's Motion is due to be denied as to the provisions of Count IV wherein Huntsville alleges breach of contract arising from "mismanage[ment of Huntsville's] natural gas reserves."

For the reasons set forth in section II, the Court finds that ProLiance had a limited fiduciary duty to Huntsville regarding the management of Huntsville's natural gas reserves but ProLiance did not have the other fiduciary duties Huntsville alleges.  As noted above, ProLiance used Huntsville's stored natural gas reserves in ways not authorized by the Agreement.  Accordingly,  ProLiance's Motion is due to be denied as to the provisions of Count IV which allege breach of fiduciary duty arising from ProLiance's management of Huntsville's natural gas reserves, but otherwise the Motion is due to be granted as to the provisions of Count IV alleging breach of fiduciary duty, self-dealing, and acting in conflict with the interests of Huntsville.

II.     Count V (Breach of Fiduciary Duty)

In Count V, Huntsville alleges breach of fiduciary duty in (i) carrying out its management

---

[1]  Huntsville's evidence is that ProLiance sold Huntsville's gas reserves as a way of reducing or offsetting the increasingly high bills Huntsville owed ProLiance for gas, and that by doing so, Huntsville was misled about what it was paying and its gas reserves were converted by ProLiance.

services; (ii) failing to provide timely advice; (iii) charging Huntsville excessive transportation fees; (iv) mismanaging Huntsville's stored natural gas reserves; (v) sending false and misleading invoices; (vi) creating and agreeing to a "scheme" to keep accurate and truthful information from Huntsville; and (vii) engaging in self-dealing and acting in a manner that was not in the best interests of Huntsville.

The Original Agreement appointed ProLiance as Huntsville's agent "under all [of Huntsville's] Firm Transportation Agreement(s), and [Huntsville's] Firm Storage Service Agreement(s) as listed on Schedule C . . . , for all gas purchases, and any other tasks reasonably necessary to manage [Huntsville's] natural gas deliveries." There is substantial evidence from which a jury could reasonably determine that ProLiance withdrew Huntsville's storage volumes without Huntsville's consent or authority. Proliance, by virtue of its control over the purchase, transportation, and storage of Huntsville's gas, owed Huntsville a fiduciary duty to exercise that authority in Huntsville's interests unless the Agreement provided otherwise. The withdrawal of Huntsville's stored gas without authority from Huntsville, if believed by the jury, could support a claim for breach of fiduciary duty. Put another way, ProLiance could take Huntsville's gas out of storage and use or sell it without authority from Huntsville. The evidentiary submissions are sufficient to create a jury question on whether or not ProLiance did so.

Having said that, the Court says that, except for the express language in the Agreement appointing ProLiance as Huntsville's limited agent set out in the preceding paragraph, the relationship between ProLiance and Huntsville was arms-length and not fiduciary in its nature. Therefore, ProLiance is entitled to summary judgment as to all provisions of Count V other than those provisions relating to management of Huntsville's gas deliveries, including injecting and

withdrawing storage volumes.

III.    Count VI (Fraudulent Inducement)

In Count VI, Huntsville alleges that it was fraudulently induced to enter into the Original Agreement by material, knowing misrepresentations made by ProLiance as to the viability of the Sipsey River Valley project (and therefore of a potential capped credit to Huntsville which might have been valued as high as $717,300).

ProLiance argues that it is entitled to summary judgment as to Count VI because, inter alia, Huntsville has produced no substantial evidence of detrimental reliance. In response, Huntsville asserts that it would have fixed gas prices if it had known that it would not receive the Sipsey River credit. To support its assertion, Huntsville points to evidence that it had fixed the price of winter gas in previous years, and to evidence that it did change to a fixed price in this Agreement (discussed in IV, dealing with Count VII (fraud), below). This evidence creates a genuine issue of material fact as to whether Huntsville detrimentally relied on ProLiance's representations about the Sipsey River Valley project credit. ProLiance's Motion is due to be denied as to Count VI.

IV.    Count VII (Fraud)

The fraud claims in Count VII are based on ProLiance's "creating and sending false and misleading invoices to Huntsville." Huntsville alleges that it "relied upon the misrepresentations" and that it was "damaged by paying amounts in excess of what was invoiced."

> An essential allegation of any fraud claim is that the plaintiff must have reasonably relied on the alleged misrepresentation. Thus, reliance in the form that the misrepresentation is 'acted on by the opposing party' is an essential element of fraud in Alabama. [citation omitted]
>
> Moreover, the burden is on the party alleging fraud to prove by substantial evidence the element of reliance. [citation omitted] 'Substantial evidence is evidence of such

8

weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' [citation omitted]

Reliance requires that the misrepresentation actually induced the injured party to change its course of action. [citation omitted]

Hunt Petroleum Corp. v. State of Alabama, 2004 WL 924138, *3 (Ala.)

Drawing all reasonable inferences in Huntsville's favor, a genuine issue of material fact exists as to whether Huntsville would have acted differently if ProLiance had sent accurate and truthful invoices.  It is undisputed that the first false invoice covered the month of December, 2000, and was received by Huntsville in January, 2001.  Had that invoice been accurate, Huntsville would have known in January, 2001, the true prices it had paid for gas in December, which was not the $2.26 "fixed" gas price shown on the December, 2000 invoice.[2]  Under the Agreement, Huntsville had the option at any time to convert from an index price to a fixed price.  Such a conversion, if made, could have been effective as early as the month of February, 2001.  In fact Huntsville, in January, 2001, converted to a "fixed" price contract effective March 1, 2001.  There is a genuine issue of material fact for the jury whether Huntsville would have made the conversion effective February 1, 2001, had it not been misled by the false invoices.  ProLiance's Motion is due to be denied as to Count VII.

V.     Count VIII (Conspiracy to Defraud)

The parties agree that in order for a claim of conspiracy to lie, there must be a viable claim of an underlying wrong.  The Court has previously held that any claim of conspiracy between

---

[2]  The $2.26 MMBtu price has additional significance because it is the price Huntsville believed, albeit incorrectly, it was going to pay for gas.  So, while there is no jury question about the Agreement price for gas, Huntsville may point to the $2.26 "price" as part of its evidence concerning reliance.

ProLiance and its employee, Bush, is dismissed, but that the claims of conspiracy to defraud between ProLiance and/or Bush and Huntsville's employee, DeMent, survive.  The Court has found that a genuine issue of material fact exists as to whether ProLiance defrauded Huntsville.  So, too, the Court finds that a genuine issue of material fact exists as to Huntsville's allegations that ProLiance and/or Bush conspired with DeMent to defraud Huntsville through the sending of false invoices. ProLiance's Motion is due to be denied as to Count VIII.

VI.    Count IX (Negligence)

Huntsville's negligence claims in Count IX are based on its assertion that ProLiance breached duties it had to Huntsville: (i) to provide timely and accurate advice as to the purchase of natural gas; (ii) to invoice only those amounts which were actually due and owing; and (iii) to obtain gas for Huntsville at the lowest available cost.

There is nothing besides the Agreement that imposes these duties on ProLiance.  The acts alleged in Count IX may, if found credible by the jury proven at trial, entitle Huntsville to its claims for breach of contract..  The existence of a claim for breach of contract does not by itself establish a tort claim for breach of duty involving the same acts.  The burden is on Huntsville to provide substantial evidence that ProLiance breached an extra-contractual legal duty owed to Huntsville that proximately caused damage to Huntsville.  <u>AALAR, Ltd. v. Francis</u>, 716 So. 2d 1141, 1144 (Ala. 1998).  Huntsville has offered no evidence to show the existence of these duties.  Absent any legal duty, the Court finds no evidence of a breach.  Therefore, ProLiance's Motion is due to be granted as to Count IX.

VII.   Count X (Wantonness)

As discussed in Section II, <u>supra</u>, the Court finds that ProLiance had a limited contractual

fiduciary duty to Huntsville, with that fiduciary duty applying to ProLiance's management of Huntsville's gas deliveries, including injecting and withdrawing storage volumes. The Court has also found that there is substantial evidence from which a jury could reasonably determine that ProLiance withdrew Huntsville's storage volumes contrary to Huntsville's consent in violation of that duty.

"Wantonness is the conscious doing of some act or the omission of some duty under the knowledge of the existing conditions, and conscious that from the doing of such act or omission of such duty injury will likely or probably result." Deaton, Inc. v. Burroughs, 456 So. 2d 771, 775 (Ala. 1984). Here, there is substantial evidence that ProLiance withdrew Huntsville's stored gas without Huntsville's consent. These alleged misdeeds are fully addressed under the breach of fiduciary duty and conversion counts of the Complaint. The uncontroverted evidence is that ProLiance applied the sums it received from the unauthorized sale of Huntsville's gas to the amount owed ProLiance by Huntsville for gas supplied to Huntsville by ProLiance, which negates the contention that ProLiance was "conscious" that its actions would likely or probably result in injury to Huntsville.[3]

Therefore, ProLiance's Motion is due to be granted as to Count X.

VIII.   Count XI (Conversion)

During oral argument, counsel for ProLiance conceded that if the contract amendment which permitted ProLiance to withdraw and sell Huntsville's stored gas was found to be unauthorized, then ProLiance was not entitled to summary judgment on the conversion claim. This Court has, by Order entered October 4, 2004 (doc 174), determined that the amendment was not authorized because the

---

[3] Of course, applying the proceeds from the unauthorized sale(s) of Huntsville's gas to Huntsville's account does not justify the sales or prove that the account balance at the time was the true amount owed when such sale(s) took place.

Huntsville signatory, John DeMent, did not have authority to sign it.  Therefore, ProLiance's Motion is due to be denied as to  Count XI.

IX.      Count XIII (Intentional Interference with Contractual or Business Relations)

In Count XIII, Huntsville alleges that ProLiance tortiously interfered with its contractual relations with "various natural gas suppliers" when Huntsville tried to replace ProLiance as its gas supplier.  ProLiance identifies those suppliers as Woodward Marketing, Prior Energy, and Duke Energy.

As to Woodward Marketing and Prior Energy, ProLiance says Huntsville lacked a reasonable expectation of a legitimate business or contractual relationship.  Huntsville offers no argument or evidence to the contrary.  Therefore, ProLiance's Motion is due to be granted as to any claims by Huntsville that ProLiance tortuously interfered in a relationship between Woodward Marketing and Huntsville or a relationship between Prior Energy and Huntsville.

As to Duke Energy, ProLiance contends that (i) ProLiance was not a "stranger" to Huntsville's contractual or business relations; and (ii) ProLiance's actions were justified.  ProLiance states that it was not a "stranger" because ProLiance was intimately entangled with the contract and the business relationship giving rise to and underpinning the Huntsville/Duke contract.  However, the contract between Huntsville and ProLiance did not "entangle" ProLiance with the contract between Huntsville and Duke Energy.  The cases cited by ProLiance as support for ProLiance's argument that it was not a "stranger" to Huntsville's business relations with Duke Energy are inapposite, requiring the Court to consider the issue of justification to determine whether or not ProLiance is entitled to summary judgment as to Duke Energy.

ProLiance asserts that its actions as to the Huntsville/Duke Energy contract were "justified" because ProLiance's actions were intended to put Duke Energy on notice that ProLiance had "what it considered to be a legitimate contract with [Huntsville] and to alert [Duke Energy] that it would take necessary action to protect its legitimate interests...."

The Court has found that there are genuine issues of material fact as to whether ProLiance fraudulently induced Huntsville to enter into the Original Agreement and the Second Amendment to that agreement.  The Court therefore finds that genuine issues of material fact exist as to whether ProLiance's "interests" were "legitimate."

ProLiance's Motion is due to be granted as to Count XIII insofar as Huntsville alleges tortuous interference in a relationship between Woodward Marketing and Huntsville or in a relationship between Prior Energy and Huntsville, and denied insofar as Huntsville alleges tortuous interference in a relationship between Duke Energy and Huntsville.

**DONE** and **ORDERED** this 9th day of December, 2004.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

13