FILED
2004 Dec-09 PM 12:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| THE CITY OF HUNTSVILLE d/b/a HUNTSVILLE UTILITIES, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: CV-02-HS-1296-NE |
| PROLIANCE ENERGY, LLC, et al. | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The City of Huntsville d/b/a Huntsville Utilities ("Huntsville") has sued Defendants ProLiance Energy LLC ("ProLiance") and Harry Bush ("Bush") for RICO violations, specifically 18 USC §§ 1962(c) (Count I), 1962(d)[1] (Count II), and 1962(a) (Count III) (the "RICO claims"). ProLiance has filed a motion for summary judgment on the RICO claims (doc. 86). The parties have briefed the issues extensively and the court heard extended oral argument on the RICO claims.

For the reasons stated, Defendant's Motion for Summary Judgment (on RICO claims) is due to be **GRANTED** as to 18 USC § 1962(a) Count III, and otherwise **DENIED**.

## Background

Huntsville has alleged several non-RICO theories of liability against ProLiance. Huntsville says that in August, 2000 Huntsville entered into an agreement with ProLiance for ProLiance to provide all of Huntsville' natural gas requirements by acting as its agent and by providing managerial services. Huntsville alleges that ProLiance breached its contract and fiduciary duties by failing to provide natural gas at the price agreed to in the contract, by failing to provide timely advice as

---

[1] John DeMent is an alleged co-conspirator, but is not a defendant.

required under the agreement for gas management services, by charging excessive transportation fees, and by mismanaging stored gas reserves. Huntsville claims that ProLiance represented to it that gas could be purchased at a low fixed rate, but Huntsville actually had to pay higher prices. Huntsville also asserts that ProLiance sent false and misleading invoices.

For its RICO claims, Huntsville claims, and the court finds Huntsville's evidentiary filings sufficient to create genuine issues of material facts on these claims, that since the Spring of 2000, Defendants ProLiance and Harry Bush, an employee of ProLiance, have engaged in a scheme to defraud Huntsville through an enterprise directed by ProLiance and Bush. Huntsville says Bush and John DeMent, a Huntsville employee, falsified invoices to indicate that natural gas was being purchased for Huntsville at a low fixed price, when it was actually being purchased at an inflated price. Defendants then set up an "off the books loan" to Huntsville in excess of $10 million that was hidden from Huntsville's Board. Defendants then sold the stored gas reserves that were supposed to be held for Huntsville at a deflated price to ProLiance and its affiliated companies to balance the "off the books loan." Huntsville further alleges that Defendants falsified natural gas transportation fees on invoices to Huntsville and billed Huntsville for gas not used by Huntsville but by independent customers of ProLiance, who also were billed for the same gas.

**Summary Judgment Standard**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the

initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing U.S. v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue

for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, 518 U.S. 343 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

**Rico Claims**

I.      18 U.S.C. § 1962(a).

Huntsville's § 1962(a) claims are based upon: (i) mail and wire fraud (18 USC §§ 1341 and 1343); and (ii) theft of interstate shipments (18 USC § 659).

RICO's Section 1964(c) authorizes civil actions for violations of (substantive) Sections 1962(a)-(d). This section requires that the plaintiff be injured "by reason of" a violation of one of the § 1962 provisions.

Eight of the nine federal circuit courts which have addressed this requirement[2] have held that § 1964(c) requires a § 1962 plaintiff to show "investment injury" **in addition to** proximate injury. (Emphasis supplied)  The Fourth Circuit does not require a showing of investment injury.  Busby v. Crown Supply Inc., 896 F.2d 833, 836-40 (4th Cir. 1990). Huntsville urges this Court to follow the Fourth Circuit.

However, the court believes the majority rule is the better rule, and adopts the formulation of that rule set out the Eighth Circuit:

> To recover in a civil suit for a violation of RICO, a plaintiff must prove: (1) that the defendant violated 18 U.S.C. § 1962; (2) that the plaintiff suffered injury to business or property; and (3) that the plaintiff's injury was proximately caused by the defendant's RICO violation. *See* 18 U.S.C. § 1964(c) (1994); *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 265-68, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *see also United HealthCare Corp. v. American Trade Ins. Co.,* 88 F.3d 563, 572 (8th Cir.1996).

Fogie v. THORN Americas, Inc. 190 F.3d 889, 894 (8th Cir.1999).

Absent any evidence of "investment injury," a plaintiff lacks standing to bring an action under

---

[2] The Eleventh Circuit has yet to address the issue.

1962(a). Huntsville says the underlying predicate acts of ProLiance were: (i) theft of interstate shipments in violation of 18 USC § 659, and (ii) mail and wire fraud. For purposes of defendant's summary judgment motion, the court finds that Huntsville has presented evidence sufficient for a jury to find all of the elements of each of those underlying predicate acts have been met. The court also finds that Huntsville has established evidence from which a jury could find that Huntsville suffered monetary damages as a proximate result of those underlying predicate acts. These damages were the differences between the price that Huntsville paid for gas supplied to them by defendant and, variously, (i) the price at which ProLiance sold Huntsville's "stolen" gas and (ii) the price at which ProLiance had agreed to supply the gas.

Huntsville claims that proof of investment injury is not a required element of a Section 1962(a) claim. As established by Fogie and the cases cited therein,:

> RICO gives only individuals who have suffered injury from the use or investment of racketeering income standing to bring a civil suit under §§ 1962(a) and 1964(c). As has been discussed by the other circuits, two grounds support this conclusion. First, § 1964(c) allows only persons injured "by reason of" a § 1962 violation to bring a civil suit under RICO. A person injured by predicate racketeering acts, such as RAC's unlawful debt collection, is not injured "by reason of" a violation of § 1962(a). Rather, that person is injured by conduct constituting only a predicate act. *Cf. Bennett v. Berg,* 685 F.2d 1053, 1060 (8th Cir.1982) ( "Significantly, [RICO] forbids the predicate acts of racketeering only insofar as an 'enterprise' is involved.... RICO is not a recidivist statute with enhanced penalties for acts of racketeering that are elsewhere proscribed in the criminal code."), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). In this case, for example, the plaintiffs were injured by RAC's collection of unlawful debt. They have recovered substantial damages for this injury under Minnesota usury law, and later in this opinion we uphold that recovery. RAC's collection of unlawful debt, however, does not constitute a violation of § 1962(a): it does not involve the use or investment of racketeering income "in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a). Therefore, the plaintiffs' injuries did not flow from a violation of § 1962 as § 1964(c) requires. Rather, RAC violated § 1962(a) only when it used or invested income from its unlawful debt collection in a manner prohibited by § 1962(a). RICO grants

standing only to parties injured by the use or investment of the unlawfully obtained income, the completed § 1962(a) violation, and the plaintiffs are not such injured parties. *See also Nugget Hydroelectric,* 981 F.2d at 437 (criticizing *Busby* because, by not requiring that a plaintiff suffer injury from the use or investment of the racketeering income, the Fourth Circuit allows "an individual to recover for injuries caused by an action that does not constitute a violation of § 1962(a)").**Second**, if individuals injured only by predicate acts could bring a civil action under § 1962(a), § 1962(c) would be rendered superfluous. Section 1962(c) creates liability for those persons who "conduct or participate ... in the conduct" of a RICO enterprise. *See* 18 U.S.C. § 1962(c) (1994); *see also Reves v. Ernst & Young,* 507 U.S. 170, 178-79, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). If § 1962(a) were read to allow any person harmed by a predicate act to bring a civil suit under RICO, a defendant could be held liable for violating RICO when that defendant engaged in a predicate act, whether or not *896 that defendant also conducted or participated in the conducting of a RICO enterprise. The restriction of § 1962(c) liability to those in management positions would be meaningless. Reading § 1962(a) so broadly that it renders § 1962(c) meaningless runs contrary to the interpretive canon that statutes should be read to give "each word some operative effect." *Walters v. Metropolitan Educ. Enters.,* 519 U.S. 202, 209, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997) (citing *United States v. Menasche,* 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615 (1955)). To prevent almost unlimited civil liability plainly contrary to the statutory scheme of § 1962, standing to bring a civil suit for a violation of § 1962(a) must be limited to those plaintiffs whose injuries flow from the use or investment of the racketeering income.

Fogie, *supra*, 190 F.3d 889 at 895 -896 (8th Cir. 1999) (Emphasis supplied).

Here, Huntsville has failed to establish any "investment injury," and so Huntsville's RICO claims cannot, as a matter of law, survive summary judgment. Huntsville may, at trial, establish that ProLiance converted its gas (the "theft" predicate act) and recover substantial damages, including punitive damages, for such conversion. Similarly, Huntsville may prevail on its breach of contract and fraud claims as to the "overcharging" for gas purchases (an element of the mail and wire fraud predicate acts). Those damages are not, however, investment injury. Rather, they are the injury that proximately resulted (if a jury so concludes) from the predicate acts.

II.    18 U.S.C. § 1962(c).

Huntsville's claims as to the predicate acts of mail and wire fraud under § 1962(c) survive

summary judgment because there is evidence from which a reasonable jury could determine that the activities complained of were open-ended, that is, that the defendants pose a threat of continuing racketeering activity. Huntsville has submitted numerous telephone calls and other evidence from which a jury could conclude that defendants' alleged "scheme" of overcharging and "hiding" such overcharges was "part of an ongoing entity's regular way of doing business." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 242 (1989). These calls could reasonably be interpreted to show that defendants routinely "hid" unauthorized charges in their bills to various customers, not just Huntsville, and that this was done with knowledge that the charges were false and with the intention to gain financial advantage at the expense of those customers. (Emphasis Supplied) *See* Dave Lorenz and Dan Harg. 4.12.01 at 14.19.05WAV (Huntsville's RICO Evid. Sub. 16 (filed under seal)); RICO Cons. Trans. 182-183 (Huntsville's RICO Evid. Sub. 17 (filed under seal)).

The phone call between Defendants Harry Bush and his ProLiance co-employee Dave Lorenz of December 21, 2000, in which Mr. Bush details his plans to "borrow" Huntsville's and other Tennessee Valley Supply Group ("TVSG") members' stored gas without title or right, sell it when prices were high and replace it when prices were low, is sufficient to create a factual issue for the jury that ProLiance and Bush represent a continuing threat. *See* Lorenz and Bush 12.21.00 15.22.57.WAV (Huntsville's RICO Evid. Sub 16 (filed under seal); RICO Cons. Trans. 37-42 (Huntsville's RICO Evid. Sub. 17 (filed under seal).

III.   18 U.S.C. § 1962(d)

Huntsville's § 1962(d) claims sound in conspiracy. As the court has found that a genuine issue of material fact exists as to Huntsville's § 1962(c) claims, the court examines the question as to whether Huntsville has produced evidence from which a jury could reasonably conclude that a

conspiracy to violate Section 1962(c) existed.  The court finds that Huntsville has met its burden to come forward with such evidence.

## Conclusion

For the reasons stated, and for such other reason that may have been stated from the bench, the court finds that Defendant's Motion for Summary Judgment (RICO claims) is due to be **GRANTED** as to Huntsville's 18 U.S.C. § 1962(a) (Count III) claims and otherwise **DENIED**.  A separate Order will be entered.

**DONE** this the 9th day of December, 2004.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge